**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.  23-cr-00292-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    CHRISTOPHER BRIAN VALDES,

    Defendant.

---

**INFORMATION**

---

The UNITED STATES ATTORNEY charges that:

**COUNT ONE
18 U.S.C. § 1343**

**General Allegations**

1.    The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.

2.    On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which provided emergency assistance to small business owners suffering adverse economic effects caused by the Coronavirus ("COVID-19") pandemic.  The CARES Act established several new temporary programs and expanded existing programs, including programs created or administered by the SBA.  Two sources of funding for small businesses were

1

the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loans ("EIDL") program.  The CARES Act mandated that only businesses in operation on February 15, 2020, for PPP, or before February 1, 2020, for EIDL, were eligible under the programs.

3. The EIDL program was an SBA program that provided low-interest financing to small businesses in regions affected by declared disasters.  The CARES Act authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic.  In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses, known as Economic Injury Disaster Grants ("EIDG"). The amount of the EIDG was determined by the number of employees the applicant certified having.  The EIDGs did not need to be repaid.

4. Until April 2021, under the EIDL program, a small business could receive a loan from the SBA in an amount of up to six months of working capital with a maximum of $150,000.  Thereafter, in April 2021, the SBA increased the EIDL limit to allow small businesses to receive loans in the amount of up to 24 months of working capital with a maximum of $500,000.  In order to obtain an EIDL and/or EIDG, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees and the entity's gross business revenues and cost of goods sold in the twelve months prior to January 31, 2020.  The amount of the loan, if approved, was determined in part based on the information provided concerning the gross revenue and cost of goods sold.  EIDL funds were issued directly by the SBA.  EIDL funds were permitted to be used for payroll

expenses, sick leave, production costs, and business obligations, such as debts, rents, and mortgage payments.

5.      The CARES Act further authorized the PPP program, which provided forgivable loans to small businesses. PPP loan proceeds were required to be used for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities.

6.      To obtain a PPP loan, a qualifying small business was required to submit a PPP loan application, signed by an authorized representative of the business, in which the applicant acknowledged the program rules and made certain affirmative certifications. The applicant was also required to state the business's: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the loan amount that the business was eligible to receive under the PPP. Businesses were also required to provide documentation showing their payroll expenses. PPP loan applications were received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, but the loans were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan. The SBA paid participating lenders a processing fee for each funded PPP loan.

**The Scheme to Defraud**

7.      Beginning in or around May 2020 and continuing through in or around May 2021, in the State and District of Colorado and elsewhere, defendant CHRISTOPHER BRIAN VALDES devised and intended to devise a scheme to defraud and to obtain money and property from the United States and participating lenders by means of materially false and fraudulent pretenses, representations and promises (hereinafter referred to as the "Scheme").  The Scheme was executed in connection with defendant VALDES's submitting fraudulent EIDL applications on behalf of entities that he controlled and on behalf of other individuals and entities, as well as defendant VALDES's creation of fabricated documents for others who he knew would use them to obtain fraudulent EIDL and PPP loans.  It was part of the Scheme that:

8.      From in or around June 2020 through August 2020, defendant VALDES prepared and submitted three fraudulent EIDL applications to the SBA on behalf of three entities that he controlled, using the identities and personal identifying information of other individuals to obtain EIDL loans and grants in their names.

9.      In these three fraudulent EIDL applications, defendant VALDES made false statements regarding the entities' number of employees, gross revenues, and cost of goods sold; he further falsely certified that the information provided in the EIDL applications was true and accurate and that the funds would be used to pay payroll and other permissible expenses when, in fact, he always intended to use the proceeds for his personal benefit.

10.     The SBA funded these three EIDLs for a total of $433,800, plus an additional $16,000 in EIDGs.

11. From in or around May 2020 to in or around May 2021, defendant VALDES also created and provided an individual ("Individual 1") with fabricated documents to submit in connection with Individual 1's PPP loan and EIDL applications, including Internal Revenue Service documents, checks, and bank statements.

12. Two of the fraudulent EIDL applications that were submitted by Individual 1 with these fabricated documents were approved and funded by the SBA for a total of $294,500. One fraudulent PPP application submitted with these fabricated documents was also approved and funded, resulting in $239,740 being sent to a bank account controlled by Individual 1.

13. From in or around June 2020 through April 2021, defendant VALDES prepared and submitted fraudulent EIDL applications to the SBA on behalf of other individuals and entities. These applications contained false statements regarding, *inter alia*, the entities' ownership, operations prior to February 1, 2020, gross revenues, cost of goods sold, and number of employees.

14. The SBA approved and funded 27 of these EIDL applications and 14 EIDGs for a total of $3,436,300 in EIDL funds and $124,000 in EDIGs.

15. In total, $4,544,340 of PPP loan and EIDL proceeds were paid out as a result of the Scheme.

**Execution of the Scheme**

16. For the purpose of executing the Scheme described in paragraphs 7–15 above, defendant VALDES caused to be transmitted by means of wire communication in interstate commerce the following signals and sounds: on or about July 7, 2020, the SBA in Denver, Colorado created and certified the payment file for the EIDL pertaining

to Zul Technologies Inc. and transmitted it via interstate wire communications from Colorado to the U.S. Treasury processing site located in the Kansas City Regional Operations Center in Kansas City, Missouri.  After a computer operator at the U.S. Treasury disbursing office in Kansas City, Missouri performed payment operations to complete the processing of the file, an Automated Clearing House (ACH) payment file was transmitted to the Federal Reserve Bank ACH processing site in New Jersey.  The Federal Reserve Bank in New Jersey processed the payment file and sent $149,900 to Wells Fargo Bank in Minnesota with Zul Technologies Inc. designated as the payee.

All in violation of Title 18, United States Code, Section 1343.

## Forfeiture Allegation

17. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

18. Upon conviction of the violation alleged in Count One of this Information involving a violation of 18 U.S.C. § 1343, defendant CHRISTOPHER BRAIN VALDES shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) any and all of the defendant's right, title and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of such offense, including, but not limited to the entry of a money judgment in the amount of proceeds obtained by the scheme and by the defendant.

19. If any of the property described above, as a result of any act or omission

of the defendant:

    a)    cannot be located upon the exercise of due diligence;

    b)    has been transferred or sold to, or deposited with, a third party;

    c)    has been placed beyond the jurisdiction of the Court;

    d)    has been substantially diminished in value; or

    e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

    COLE FINEGAN
    UNITED STATES ATTORNEY

    s/ <u>Nicole C. Cassidy</u>
    By: Nicole C. Cassidy
    Assistant United States Attorney
    1801 California Street, Suite 1600
    Denver, CO 80202
    Phone: (303) 454-0100
    Fax: (303) 454-0402
    nicole.cassidy@usdoj.gov